**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS & BETTS CORPORATION, <br><br> Defendant. | Civil Action No. 13-6187 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court on Defendant Thomas & Betts Corporation's ("Defendant") objections[1] to Special Master Joel Rosen's ("Special Master Rosen") Report and Recommendation ("R&R"), granting Plaintiffs The Travelers Indemnity Company, The Travelers Indemnity Company of Connecticut, and Travelers Casualty and Surety Company's (collectively, "Plaintiffs") Motion for Partial Summary Judgment concerning the methodology for allocating defense and indemnity costs incurred by Defendant,[2] and denying Defendant's Cross-Motion for

---

[1] The Court must make a *de novo* determination with respect to those parts of the R&R to which a litigant objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(a); L.Civ.R. 72.1(c)(2) (stating that a court must make a *de novo* determination regarding any portions of a Report and Recommendation objected to by a party). Here, Defendant objects to the inclusion of excess and umbrella coverage limits in the allocation analysis and the consideration in the allocation analysis given to a piece of 2009 correspondence that it contends established a course of dealing between the parties. (Def.'s Moving Br. 2, ECF No. 75). This Memorandum Opinion, therefore, relates to this issue.

[2] The Court notes that the issue addressed in the R&R relates to the methodology for "allocation of defense and indemnity costs arising from underlying asbestos claims for which [D]efendant seeks insurance coverage." (R&R 1, ECF No. 74.)

Partial Summary Judgment concerning a different allocation methodology. (ECF No. 75.) Plaintiffs opposed the Motion (ECF No. 78), and Defendant replied (ECF No. 79). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court adopts Special Master Rosen's R&R and grants Plaintiffs' Partial Motion for Summary Judgment.

## I. Introduction

Special Master Rosen concluded that Plaintiffs' Motion for Partial Summary Judgment should be granted because, under *Owens-Illinois, Inc. v. United Insurance Co.*, "any allocation should be in proportion to the degree of the risks transferred or retained during the years of exposure," where the degree of risk transferred is measured by the amount of coverage purchased. (R&R 9-10, ECF No. 74 (quoting *Owens-Illinois, Inc. v. United Ins. Co.*, 650 A.2d 974, 993 (N.J. 1994)).) In assessing the risk transferred, Special Master Rosen found that there was no precedent in New Jersey excluding excess or umbrella coverage based on the probability that the policy would be called upon to pay a claim. (*Id.* at 10-11.) Relying on *Owens-Illinois*, Special Master Rosen found that under New Jersey law, coverage purchases reflect the degree of risks transferred. (*Id.* at 12.) To that end, because excess and umbrella coverage purchases are a type of risk transfer and the parties agreed that New Jersey law applies, Special Master Rosen concluded that such coverage should be included in the allocation methodology. (*Id.* at 3 n.2 (citing July 9, 2015 Stip. Ex. E, ECF No. 59-32).)

Before Special Master Rosen, Plaintiffs argued "for an allocation methodology spreading the costs of a given claim over all of the policy years triggered by the claim in proportion to [the]

2

total[3] amount of insurance purchased by [Defendant] (or the amount of risk retained by [Defendant]) for each of the triggered policy periods." (R&R 4-5.) In support of their position, Plaintiffs argued that the New Jersey Supreme Court has "adopted the 'continuous trigger theory' for long-tail asbestos injury, which holds that such injury shall be treated as 'an occurrence within each of the years of a [Commercial General Liability] policy,' thereby 'triggering' the policies for each year from the date of first exposure through manifestation." (*Id.* (citing Aug. 8, 2016 Submission 8).) Thus, relying on *Owens-Illinois* and *Carter-Wallace, Inc. v. Admiral Insurance Co.*, 712 A.2d 1116 (N.J. 1998), Plaintiffs argued that "'the percentage share of risk assumed in each triggered policy period' should be calculated by applying" a formula that accounts for triggered umbrella and excess policies. (R&R 5-6.)

Defendant, on the contrary, argued "for a different allocation formula—one that only takes into account the primary level of coverage and not the excess or umbrella policies." (R&R 6.) In support of its position, Defendant made an equitable argument, asserting that "a special master has substantial discretion in developing an allocation 'that fairly reflects the risks assumed or transferred.'" (*Id.* (citing Sept. 6, 2016 Submission 15).) Defendant, therefore, argued that "justice is best served by only including the primary policies in the allocation calculation because the underlying claims are so small . . . that there is no reasonable probability that the umbrella or excess policies will ever be reached or 'triggered.'" (*Id.* at 6-7 (citing Sept. 9, 2016 Submission).) Under Defendant's proposed methodology allocation, the excess and umbrella policies should not be taken into account because "the primary policies have an unlimited defense obligation, [and,

---

[3] The R&R states that the "'total' amount of insurance purchased (or risk retained), [Plaintiffs] mean[] the primary bodily injury per occurrence limit plus the total umbrella and excess per occurrence limit, regardless of whether the umbrella or excess policies will ever be reached." (R&R 5.)

3

consequently,] the excess and umbrella policies will never be reached in connection with the defense costs." (*Id.* at 7 (citing Sept. 9, 2016 Submission 16).)

Special Master Rosen found that "[t]he insurance purchasing patterns of [Defendant] demonstrate that when [Defendant] wanted to transfer more risk, they did so by purchasing increasing levels of excess and/or umbrella coverage." (R&R 12.) Special Master Rosen, therefore, concluded that Plaintiffs' Motion should "be granted to the extent it agrees with the analysis and allocation methodology set forth [in the R&R] and denied to the extent it does not." (R&R 15.)

## II. Parties' Positions

The parties disagree on the appropriate allocation methodology for indemnity and defense costs, and on whether excess and umbrella policy limits are included in the allocation methodology when it is unlikely that such coverage will be utilized to pay a claim.[4] (*See* Def.'s Moving Br. 8; Pls.' Opp'n Br. 9, ECF No. 78.) Defendant contends that the relevant primary polices in this case will never be exhausted, and that including the excess and umbrella policies in the allocation methodology violates the equitable principles set forth in *Owens-Illinois* and its progeny. (Def.'s Moving Br. 8-9.) Defendant, therefore, argues that based on the specific facts of this case, the Court should consider the probability that the excess and umbrella coverage would be triggered due to exhaustion of primary coverage when determining whether to include excess and umbrella

---

[4] The parties have entered several stipulations in this case. For the sake of efficiency, the Court adopts references to the relevant stipulations, which are outlined in Special Master Rosen's R&R. (*See* R&R 3 n.2, 4 (citations omitted).) As Special Master Rosen notes, "[t]he parties' stipulations have resolved any disputes about the primary policy per occurrence limits and the umbrella and excess total per occurrence limits for each policy period. . . . The parties also stipulated to the end date and a default start date . . . for the allocation periods, or in some situations a methodology for determining the allocation period." (R&R 8-9; *see* July 9, 2015 Stip. 3, ECF No. 78-2; Nov. 16, 2016 Stip. 4, ECF No. 78-3.)

4

coverage in the allocation methodology.[5] (*Id.* at 8-9, 14-15; Def.'s Reply Br. 1-2, ECF No. 79.) Plaintiffs argue that, because New Jersey law applies to Defendant's purchase of excess and umbrella coverage, the coverage should be included in the calculation of risk transferred under the controlling standard set forth in *Owens-Illinois* and its progeny. (Pls.' Opp'n Br. 3, 9-16.)

### III. Discussion

Special Master Rosen relied on *Owens-Illinois* in determining whether excess and umbrella coverage should be considered in the allocation methodology. (R&R 11.) According to *Owens-Illinois*, "any allocation should be in proportion to the degree of the risks transferred or retained during the years of exposure [to injurious conditions]. . . . *i.e.,* proration on the basis of policy limits, multiplied by years of coverage." 650 A.2d at 993. "The *Owens-Illinois* method intentionally assigns a greater portion of indemnity costs to years in which greater amounts of insurance were purchased[.]" *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 978 F. Supp. 589, 605 (D.N.J. 1997).

Although *Owens-Illinois* only considered co-insurers' indemnity cost obligations, defense costs are allocated in the same manner. *Potomac Ins. Co. of Ill. ex rel. OneBeacon Ins. Co. v. Pa.*

---

[5] Defendant raises a course of dealing argument with respect to whether excess and umbrella limits should be included in the allocation methodology. (Def.'s Moving Br. 2, ECF No. 75-1.) Defendant contends that Special Master Rosen failed "to give dispositive effect to an allocation prepared by [Plaintiffs] in 2009 (before this litigation), in which excess and umbrella policies were not included, in recognition of the fact that there is not even a remote possibility that such layers of coverage will be reached." (*Id.*) Defendant asserts that the 2009 correspondence confirms a course of dealing between the parties, and is cited on page seven of the R&R but it is not analyzed or discussed. (*Id.*) The August 13, 2009 correspondence prepared by Plaintiffs, however, appears to be based on application of New York law, which only includes primary policy coverage in the allocation methodology. (*See* Aug. 13, 2009 Letter, Ex. K, ECF No. 78-12.) On July 9, 2015, the parties agreed that "New Jersey law shall apply as to the allocation of defense and indemnity costs for both the Amerace policies and the Thomas & Betts policies." (July 9, 2015 Stip. 3, Ex. DD, ECF No. 59-32.) Because the parties have stipulated that New Jersey law applies, the Court need not reach the course of dealing argument because New Jersey, and not New York, law applies here.

*Mfrs.' Ass'n Ins. Co.*, 73 A.3d 465, 474-75 (N.J. 2013) (holding that the "allocation of defense costs comports with *Owens-Illinois* and its progeny"). Rather than require "each layer of insurance [to] be exhausted across all of the triggered policy years before the next layer would be allocated[.] . . . apportionment of damages among policy years [is done] without reference to the layering of policies in the triggered years." *Carter-Wallace*, 712 A.2d at 1123. The allocation for both defense and indemnity costs, therefore, are based on the degree of risk transferred as reflected by the purchase of insurance, regardless of the likelihood that the policy will answer a claim.

In their briefs, the parties cite to *Ward Sand & Materials Co. v. Transamerica Insurance Co.*, No. L-4130-09, 2016 WL 237781, at *1 (N.J. Super. Ct. App. Div. Jan 12, 2016), an unpublished decision by the New Jersey Appellate Division that discusses *Owen-Illinois* and its progeny with respect to insurance cost allocation for long-tail environmental contamination. (*See* Def.'s Moving Br. 12-13; Pls.' Opp'n Br. 13-14.) The *Ward Sand* court addressed the allocation of coverage among primary and excess insurers, some of which were insolvent, by applying the *Owens-Illinois* methodology. *Ward Sand & Materials Co.*, 2016 WL 237781 at *4. In *Ward Sand*, the plaintiff argued that, because insolvent insurers would never answer its claims, the "sums allocated to insolvent insurers should be reallocated among solvent primary and excess insurers." *Id.* at *1. The appellate court rejected this argument, holding that "the allocation . . . include[ed] the full policy limits as contained in the written policies for all policies[, including those that will never answer a claim,] issued to [the plaintiff] and in effect during the triggered policy coverage years." *Id.* at *2.

Defendant argues that *Ward Sand* is distinguishable because it involved allocation to insolvent policies. (Def.'s Moving Br. 12.) The Court finds *Ward Sand* and its application of the *Owens-Illinois* allocation methodology persuasive with respect to cost allocation to purchased

excess policies, regardless of the likelihood that such coverage will answer a claim. The *Owens-Illinois* court, which did not address the allocation of excess and umbrella coverage, further noted that one prospective encumbrance to its proposed solution was determining "how primary and excess coverage [would] be taken into account" in assessing the degree of risk assumed. 650 A.2d at 994. The court held that it must endow "a substantial measure of discretion in a master who must develop the formula that fairly reflects the risks assumed or transferred[,]" finding that "[a]bove all, the master should develop a workable system for efficient assignment and administration of the claims" because "there is a need . . . to arrive at an administratively manageable interpretation of the insurance policies[,] one that can be applied with minimal need for litigation." *Id.* at 993-94.

Here, Special Master Rosen used his discretion to apply a manageable allocation methodology consistent with *Owens-Illinois*. While the facts of *Owens-Illinois* did not involve excess or umbrella coverage, Special Master Rosen considered whether to include excess and umbrella coverage in calculating the risks transferred, as required by *Owens-Illinois*. In determining whether risk transfer should be measured by all coverage purchased, including excess and umbrella coverage, or rather by the likelihood that such coverage will ever be used to pay a claim, Special Master Rosen found that, "when an insured wants to transfer more risk, it does so by purchasing more umbrella or excess coverage."[6] (R&R at 11 n.7.)

---

[6] Special Master Rosen also emphasized that excluding excess and umbrella coverage where it is unlikely to be used to answer a claim would require the Court "to predict the future size of a claim and guess whether a primary policy will be exhausted by the claim[,]" (R&R 11), which the Court finds is an outcome that would not reflect an "administratively manageable interpretation . . . applied with minimal need for litigation." *Owens-Illinois*, 650 A.2d at 993.

Based on *Owens-Illinois*, Special Master Rosen concluded that the purchasing decisions, rather than the probability that the excess and umbrella coverage would be reached, reflect the transfer of risk.[7] (*Id.* at 11.) Special Master Rosen found that the "escalation of policy limits over time reflects an increase in the risks being transferred." (*Id.* at 10.) Because Defendant purchased excess and umbrella coverage in increasing volume over the span of decades, Special Master Rosen noted:

> The insurance purchasing patterns of [Defendant] . . . demonstrate that when [Defendant] wanted to transfer more risk, [it] did so by purchasing increasing levels of excess and/or umbrella coverage. Thus, to make an allocation "in proportion to the degree of the risks transferred or retained during the years of exposure," the umbrella and excess per occurrence limits must be included in the allocation formula. Ignoring these policies as [Defendant] suggests would not reflect "the economic realities of risk retention and risk transfers." The case law makes clear that the coverage decisions made when the policies were purchased drive the allocation, not the probabilities of primary or excess policies answering for a claim.

(*Id.* at 12 (internal citations omitted).) The Court agrees with Special Master Rosen's R&R and finds that Special Master Rosen reasonably used his discretion to conclude that because allocations take into consideration the risks transferred under *Owens-Illinois* and its progeny, and the decision to purchase excess and umbrella coverage reflects the transfer of risk. Thus, the Court concludes that excess and umbrella coverage should be included in the allocation methodology as outlined by Special Master Rosen's R&R.

Accordingly, for the reasons set forth above, the Court adopts the findings of fact and conclusions of law in the R&R. The Court GRANTS Plaintiffs' Motion for Partial Summary Judgment to the extent that the allocation methodology is consistent with *Owens-Illinois* and the

---

[7] "The theory of insurance is that of transferring risks. Insurance companies accept risks from manufacturers and either retain the risks or spread the risks through reinsurance." *Owens-Illinois*, 650 A.2d at 992.

methodology that Special Master Rosen applied in the R&R. The Court DENIES Defendant's Cross-Motion for Summary Judgment. An order consistent with this Memorandum Opinion will be entered.

                                           s/ Michael A. Shipp
                                           **MICHAEL A. SHIPP**
**Dated:** July 26, 2017                          **UNITED STATES DISTRICT JUDGE**